UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORIX GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 20 C 1158 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CORRECTIONAL TECHNOLOGIES, INC., d/b/a Cortech USA, and VDL INDUSTRIES, LLC, d/b/a American Shamrock, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Norix Group, Inc. brings this suit against Correctional Technologies, Inc. and VDL Industries, LLC (together, "Cortech"), alleging infringement of two Norix-owned patents, one relating to beds (the '150 patent) and the other to shelving units (the '642 patent). Doc. 14. Cortech moves to stay this case pending *ex parte* reexamination proceedings of the '150 patent before the U.S. Patent and Trademark Office ("PTO"). Doc. 27. Cortech also moves under Civil Rule 12(b)(6) to dismiss Norix's claim that it infringed the '642 patent. Doc. 33. Cortech's motion to stay is granted in part and denied in part, and its motion to dismiss is denied.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Norix's brief opposing dismissal, so long as those additional facts "are consistent with

1

the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Norix as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Norix holds several patents relating to "intensive use" furniture, meaning furniture used in environments—such as jails, prisons, behavioral health care centers, and psychiatric facilities—in which traditional furniture poses health and safety risks. Doc. 14 at ¶¶ 8-9, 11. This case involves two of those patents. The first is the '150 patent—U.S. Patent No. 10,507,150—which claims intensive use beds with "several innovative features, including support ridges on the side and end walls and mounting flanges in the outer shell." *Id*. at ¶¶ 26-27. The '150 patent's claims are embodied in Norix's "Attenda Platform Bed" line. *Id*. at ¶¶ 38-41. The second is the '642 patent—U.S. Patent No. 10,575,642—which claims intensive use shelving units with "several innovative features, including a J-bar configuration hangar [sic] support molded into the unit." *Id*. at ¶¶ 30-31. The '642 patent's claims are embodied in Norix's "Attenda Wardrobe" line. *Id*. at ¶¶ 69-71.

Like Norix, Cortech manufactures and sells intensive use furniture. *Id*. at ¶¶ 42-50, 72-75. Norix's original complaint alleged that Cortech's "Endurance Series" line of beds infringes the '150 patent. Doc. 1 at ¶ 1. Norix's amended complaint adds a count alleging that Cortech's "Endurance Series" line of shelving units infringes the '642 patent. Doc. 14 at ¶¶ 114-125. After the amended complaint was filed, Cortech asked the PTO to initiate an *ex parte* reexamination of the '150 patent, citing three publications that, according to Cortech, anticipated the '150 patent. Doc. 27-1. After the PTO initiated the reexamination—which meant that it had

"determine[d] [that] the request raise[d] 'a substantial new question of patentability affecting any claim of the patent,'" *Celgene Corp. v. Peter*, 931 F.3d 1342, 1359 (Fed. Cir. 2019) (quoting 35 U.S.C. § 303(a))—Cortech moved this court to stay this suit pending the reexamination. Doc. 27. While the stay motion was pending, a PTO examiner rejected all the '150 patent's claims as unpatentable in light of the prior art submitted by Cortech. Doc. 53-1.

## Discussion

### I. Motion to Dismiss

Cortech makes three arguments to support dismissal of Norix's claim alleging infringement of the '642 patent. The first concerns an alleged defect in the patent application process. The patent application that ultimately yielded the '642 patent claimed priority to several earlier applications. Doc. 14 at ¶¶ 14-29. Cortech contends that the application failed to comply with the procedures outlined in 35 U.S.C. § 120 and 37 C.F.R. § 1.78 because it did not include sufficient information about the previous applications. Doc. 33 at 7-10. And Cortech argues that "[t]he '642 patent is currently unenforceable" in light of that alleged defect. *Id*. at 7.

After Cortech moved to dismiss on this ground, Norix petitioned the PTO to correct the '642 patent to include the information omitted from the application. Doc. 50-1. The PTO granted the petition and issued a certificate of correction confirming the change. Doc. 50-2.

Likely anticipating that Norix would take this step, Cortech contends that Norix "cannot seek relief for any alleged infringement of the claims of that patent that allegedly occurred *prior* to the issuance of a certificate of correction because, *prior* to that date, the patent is not valid and enforceable." Doc. 33 at 9 (emphases added). Even if Cortech is right that Norix may not recover damages for *pre*-correction infringement, the infringement claim still would survive as to Norix's request for injunctive relief and damages to remedy Cortech's alleged *ongoing* infringement. *See E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols., L.L.C.*, 525 F.3d

3

1353, 1362 (Fed. Cir. 2008) (explaining that a certificate of correction is effective even after an infringement suit is filed because "each act of infringement gives rise to a separate cause of action").

Cortech's second argument is that its shelving units cannot possibly infringe the '642 patent because all the patent's claims refer to a "hangar" rather than a "hanger." In everyday usage, a "hanger" is something used to hang clothes, *Hanger*, *Webster's Third New International Dictionary* (1961) (def. 3c), while a "hangar" is a place for storing and repairing aircraft, *Hangar*, *Webster's Third New International Dictionary*, *supra* (entry 1). Thus, argues Cortech, "the [patent's] claims, as written, are absurd or nonsensical," meaning that Norix's infringement claims must be dismissed. Doc. 33 at 11.

As principal support, Cortech cites *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004), a case involving a patent that claimed a process involving "heating … batter-coated dough to a temperature in the range of about 400° F. to 850° F." *Id*. at 1372 (quoting the patent). The problem with the claim was that "if the batter-coated dough [were] heated to a temperature range of 400° F. to 850° F., as the claim instructs, it would be burned to a crisp." *Id*. at 1373. It was quite clear that the patentee intended the temperature range to refer to the temperature of the oven in which the dough was to be heated, not the target temperature for the dough itself. *See id*. at 1373-74. But the Federal Circuit held that this was no avail to the patentee, reasoning that even when a patent as written is nonsensical and the error is obvious, "courts may not redraft claims, whether to make them operable or to sustain their validity." *Id*. at 1374. The court instead "construe[d] the claim as written, not as the patentees wish they had written it," and dismissed the suit. *Ibid*. Cortech urges the same result here—that the court must

4

accept the '642 patent just as it is written, that is, as referring to a place for storing and repairing aircraft, not something used to hang clothes.

      Cortech's arguments fail to persuade, at least at this juncture. True enough, where "claims are susceptible to only *one reasonable interpretation* and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated." *Ibid*. (emphasis added) (quoting *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999)). But the problem with Cortech's argument is that it presupposes that there is only one reasonable interpretation of the word "hangar" in the context of the '642 patent. That presupposition is not necessarily correct, as the court cannot foreclose at this early stage the possibility that it will construe the term "hangar," in the context of the '642 patent, to mean an object from which clothes are hung. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). The term "hangar" as used in the '642 patent might possibly be susceptible to that construction because it is ambiguous in that context, as the patent claim makes no semantic sense if "hangar" is construed to refer to an airplane storage unit. Put another way, there may be intrinsic evidence in the '642 patent suggesting that "hangar" refers to a place for hanging clothes, not storing airplanes—perhaps enough to override the extrinsic evidence provided by the term's dictionary definition. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc) ("[W]hile extrinsic evidence can shed useful light on the relevant art, … it is less significant than the intrinsic record in determining the legally operative meaning of claim language.") (internal quotation marks omitted); *see also Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1380 (Fed. Cir. 2016) ("Although courts are permitted to consider extrinsic evidence (e.g., expert testimony, dictionaries, treatises), such evidence is generally of less significance than the intrinsic record."). That was not the situation in *Chef America*, where the

5

phrase "*to* a temperature … of 400° F" in the patent was unambiguous in a semantic sense, thus rendering the court unable to read it to mean "*at* a temperature … of 400° F" just because the claim as written made no technological sense. *Chef Am.*, 358 F.3d at 1374-75.

To illustrate the point, consider two hypothetical drafting errors in a patent purporting to claim a process involving heating an oven to 400 degrees. Claim 1A states that the chef should heat the oven to "4000 degrees," while Claim 1B states that the oven should be heated to "400 decrees." Under *Chef America*, because the term "4000 degrees" in Claim 1A has only one conceivable meaning as a semantic matter, Claim 1A will cover only a nonsensical and useless procedure (and therefore likely be invalid). But the term "400 decrees" in Claim 1B is subject to construction, for it is not clear what the word "decree" means in the context of that claim. Granted, in everyday conversation, a "decree" is an order issued by an authority. *Decree*, *Webster's Third New International Dictionary*, *supra* (entry 1, def. 1). But the meaning of "decree" in the context of Claim 1B is ambiguous in light of the intrinsic evidence from the claim itself, and thus is a matter to be resolved at the claim construction stage. *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342-43 (Fed. Cir. 2001) (explaining that because "a claim construction that would exclude the preferred embodiment is rarely, if ever, correct," a court "need[s] to examine the written description and the drawings to determine whether the preferred embodiment falls within the scope of a construed claim") (internal quotation marks omitted).

So, too, here. The court cannot determine the meaning of the term "hangar" in the '642 patent on the pleadings, before a *Markman* hearing. If the court construes that term to have the meaning related to aircraft, Cortech may seek (and would presumably be entitled to) summary

judgment. But with the meaning of the term "hangar" still unsettled, the '642 patent's usage of that word does not provide fodder for a Rule 12(b)(6) motion.

Finally, Cortech argues that Norix's claim that it infringed the '642 patent should be dismissed because, "[e]ven accepting the facts as pleaded by [Norix], at least one element, the 'J-Bar configuration' required in every claim of the '642 Patent, is absent from the accused Cortech wall mount shelves." Doc. 33 at 12-13. In support, Cortech offers a detailed analysis that interprets the term "J-Bar" and explains why the allegedly infringing Cortech products do not have that component. *Id*. at 14-17; *see id*. at 17 ("A J-Bar configuration requires a hook shaped device that circles around the back towards the top of the 'J' or 'hook' as shown by item 212 in Figure 28 of the '642 Patent. The Cortech shelf pocket, unlike the J-Bar configuration, is open on top, enclosed on all sides and has a flat closed bottom and can be used to hold a toothbrush, a tube of toothpaste, a comb and/or a person's eye glasses. Unlike the J-Bar configuration, the Cortech trough or pocket is designed to hold such items and provides easy access to the bottom, thus enabling access to retrieve such items. And yes, it can also be used to support a clothes hangar for hanging clothes, but that does not make the shelf trough a 'J-Bar configuration hangar support.'") (emphasis omitted).

This argument, like Cortech's argument about the meaning of the word "hangar," is premature. Whether the accused Cortech shelving units possess a "J-Bar" depends on the meaning in the '642 patent of the term "J-Bar," which is not a term in ordinary use and does not appear to be defined in the patent itself. After claim construction, the meaning of that term may become clear, and Cortech then will have the opportunity to seek summary judgment on the ground that its products do not have a "J-Bar." But contrary to Cortech's submission, the court cannot conclude on the pleadings that, "[e]ven without a formal claim construction, … it is still

7

abundantly clear that Cortech's accused products do not have the 'J-Bar configuration hangar support' limitation claimed." *Ibid*.

In sum, none of Cortech's arguments provides a persuasive rationale at this juncture for dismissing Norix's claim that it infringed the '642 patent. The motion to dismiss is denied.

## II. Motion to Stay

District courts have the "inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citation omitted). The three factors governing whether to grant a stay are: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the court." *Amodeo v. Grubhub, Inc.*, 2017 WL 5166647, at *2 (N.D. Ill. Aug. 11, 2017) (St. Eve, J.) (internal quotation marks omitted); *see also*, *e.g.*, *Colorlab Cosmetics, Inc. v. Fairy Dust Ltd.*, 2008 WL 11517628, at *1 (N.D. Ill. Oct. 7, 2008) (applying these factors to a motion to stay pending the PTO's reexamination of a patent); *Panduit Corp. v. Chatsworth Prods., Inc.*, 2005 WL 577099, at *1 (N.D. Ill. Mar. 2, 2005) (similar).

Any argument against a stay as to Norix's claim that Cortech infringed the '150 patent evaporated when the PTO examiner invalidated all the patent's claims. If the examiner's action survives review (if Norix seeks it) by the Patent Trial and Appeal Board and the Federal Circuit, *see* 35 U.S.C. § 141; 37 C.F.R. § 41.31(a), there will be no valid '150 patent for Cortech to have infringed. So staying discovery relating to '150 patent obviously will reduce unnecessary burdens on the parties, simplify any future questions regarding the patent's validity, and not impose unfair prejudice on either party. *See Ethicon*, 849 F.2d at 1428 ("[E]ven if the reexamination did not lead to claim amendment or cancellation, it could still provide valuable

analysis to the district court, which it could consider in reaching its determination.") (citations omitted). Accordingly, a stay as to that infringement claim will issue.

The only debatable question is whether the court should stay the entire case. Because the two infringement claims—one involving the '150 patent, and the other involving the '642 patent—involve different patents and different allegedly infringing products, and because it is unlikely that claims of infringement of the '150 patent will ever go forward, there is no reason to delay the litigation with respect to the '642 patent.

## Conclusion

Cortech's motion to dismiss Norix's infringement claim regarding the '642 patent is denied. Cortech's motion to stay is granted in part and denied in part. Norix's infringement claim regarding the '150 patent is stayed pending final resolution of the PTO's *ex parte* reexamination, while the infringement claim regarding the '642 patent may proceed.

January 19, 2021

_____
United States District Judge