UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORIX GROUP, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 20 C 1158 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CORRECTIONAL TECHNOLOGIES, INC., d/b/a Cortech USA, and VDL INDUSTRIES, LLC, d/b/a American Shamrock, | ) ) ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**MEMORANDUM OPINION AND ORDER**

Norix Group, Inc. brought this suit against Correctional Technologies, Inc. and VDL Industries, LLC (together, "Cortech"), alleging infringement of two patents, one relating to beds (the '150 patent) and the other to shelving units (the '642 patent). Doc. 14. Early in the case, Cortech asked the U.S. Patent and Trademark office ("PTO") to initiate an *ex parte* reexamination of the '150 patent. Doc. 27-1. After a PTO examiner rejected all the '150 patent's claims as unpatentable, Doc. 53-1, the court stayed Norix's infringement claim based on the '150 patent; at the same time, the court denied Cortech's Civil Rule 12(b)(6) motion to dismiss Norix's infringement claim based on the '642 patent and declined to stay that claim. Docs. 57-58 (reported at 2021 WL 170739 (N.D. Ill. Jan. 19, 2021)). Several months later, the PTO disagreed with the examiner and held that the '150 patent claims are patentable, Doc. 88-1, and the court lifted the stay, Doc. 89.

Cortech then filed a second amended answer, affirmative defenses, and counterclaims. Doc. 95. Norix moves under Rule 12(b)(6) to dismiss two of the counterclaims—which allege violations of §43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the Illinois Uniform Deceptive

1

Trade Practices Act ("UDTPA"), 815 ILCS 510/1 *et seq.*—and under Rule 12(f) to strike Cortech's prosecution history estoppel affirmative defense and Paragraphs 7-47 and 64 of its counterclaims. Doc. 99. Norix's motion to dismiss is granted, and its motion to strike is denied.

**Background**

Although this is a patent case, the Seventh Circuit's Rule 12(b)(6) and Rule 12(f) standards govern Norix's motion. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009) (noting that "procedural matter[s]" are "governed by the law of the regional circuit"); *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) ("This court reviews the dismissal of a claim under Rule 12(b)(6), a matter of procedure, by applying the law of the regional circuit."). In resolving Rule 12(b)(6) and Rule 12(f) motions, the court assumes the truth of the operative pleadings' well-pleaded factual allegations, though not their legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016); *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975). The court must also consider "documents attached to the [pleadings], documents that are critical to the [pleadings] and referred to in [them], and information that is subject to proper judicial notice," along with additional facts set forth in Cortech's opposition brief, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Cortech as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Norix holds several patents relating to "intensive use" furniture, meaning furniture used in environments—such as jails, prisons, behavioral health care centers, and psychiatric

facilities—in which traditional furniture poses health and safety risks. Doc. 14 at ¶¶ 8-9, 11. The '150 patent—U.S. Patent No. 10,507,150—claims intensive use beds with "several innovative features, including support ridges on the side and end walls and mounting flanges in the outer shell." *Id*. at ¶¶ 1, 26-27. The '642 patent—U.S. Patent No. 10,575,642—claims intensive use shelving units with "several innovative features, including a J-bar configuration hangar [sic] support molded into the unit." *Id*. at ¶¶ 1, 30-31.

Like Norix, Cortech manufactures and sells intensive use furniture. *Id*. at ¶¶ 42-50, 72-75. Norix alleges that Cortech manufactures certain intensive use beds that infringe the '150 patent and certain intensive use shelving units that infringe the '642 patent. *Id*. at ¶¶ 101-125. Other facts pertinent to Norix's motion to dismiss and strike are set forth below.

## Discussion

I.     **Motion to Dismiss**

    A.     **Lanham Act Counterclaim**

Seventh Circuit precedent governs Cortech's Lanham Act counterclaim. *See Thompson v. Haynes*, 305 F.3d 1369, 1374 (Fed. Cir. 2002). "To prevail on a deceptive-advertising claim under the Lanham Act, a plaintiff must establish that: (1) the defendant made a material false statement of fact in a commercial advertisement; (2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) the plaintiff has been or is likely to be injured as a result of the false statement." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381-82 (7th Cir. 2018); *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 819 (7th Cir. 1999). Cortech claims that Norix violated the Lanham Act in several respects.

*False or Misleading Letters*. Cortech first alleges that Norix sent false and misleading letters to Cortech's customers and potential customers about Cortech's products. Doc. 95 at

3

pp. 66-67, ¶¶ 96, 100. Under Seventh Circuit precedent, deceptive advertising claims under the Lanham Act are "limited to misrepresentations 'in commercial advertising or promotion,'" *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 521 (7th Cir. 2012), and "letters sent to customers" do not qualify as "commercial advertising or promotion," *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003). *Neuros* adds the proviso that "a systematic communicative endeavor to persuade possible customers to buy the seller's product," one that "takes a form other than publishing or broadcasting" but that reaches "most of" a plaintiff's potential customers, can qualify as "commercial … promotion," 698 F.3d at 522, but Cortech does not allege that Norix engaged in any such systematic effort. *See Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 624 (7th Cir. 2005) (holding that three person-to-person communications at a trade show did not comprise "commercial advertising or promotion"); *Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, 2015 WL 3637740, at *20 (N.D. Ill. June 11, 2015) ("[P]rivate one-to-one communications do not constitute 'commercial advertising or promotion' unless systematically communicated to a substantial portion of the relevant market for a product."). It follows that the Lanham Act counterclaim cannot rest on the letters that Norix sent to Cortech's customers and potential customers.

*Cease-and-Desist Letter*. Cortech also alleges that Norix "served a cease-and-desist letter upon [Cortech's] counsel … the day the '642 Patent issued." Doc. 95 at p. 58, ¶ 40. If letters to customers generally do not qualify as commercial advertising or promotion, nor does a letter sent to the alleged infringer itself.

*Filing This Lawsuit*. Cortech next alleges that Norix "asserted the '642 Patent" in this lawsuit despite knowing that the patent "was invalid and unenforceable at that time." *Id*. at pp. 66-67, ¶¶ 96-97, 99, 101. But filing a lawsuit is not commercial advertising or promotion

4

under § 43(a).  *See Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1349 (Fed. Cir. 1999) ("[T]he initiation of an infringement suit is clearly not covered by the text of § 43(a)"); *Shuffle Tech Int'l, LLC v. Sci. Games Corp.*, 2015 WL 5934834, at *16 (N.D. Ill. Oct. 12, 2015) (same); *Junction Sols., LLC v. MBS Dev, Inc.*, 2007 WL 4234091, at *6 n.3 (N.D. Ill. Nov. 20, 2007) (same).

*Withholding and Concealing Material Prior Art and Disregarding the PTO's Rules and Procedures*.  Finally, Cortech alleges that Norix withheld and concealed material prior art and disregarded the PTO's rules and procedures in various ways during the prosecution of its patent applications.  Doc. 95 at p. 67, ¶¶ 100-101.  But obtaining a patent through inequitable conduct does not violate §43(a), as "the established remedy for inequitable conduct is unenforceability of the patent."  *Pro-Mold & Tool Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1575 (Fed. Cir. 1996); *see also Shuffle Tech Int'l*, 2015 WL 5934834, at *16 (same).

Because Cortech's factual allegations do not show that Norix engaged in commercial advertising or promotion, its Lanham Act counterclaim is dismissed.

B.      **UDTPA Counterclaim**

A party violates the UDTPA "when, in the course of [its] business, vocation, or occupation, [it] … disparages the goods, services, or business of another by false or misleading representations of fact."  815 ILCS 510/2(a)(8).  The factual allegations underlying Cortech's UDTPA counterclaim mirror those of its Lanham Act counterclaim.  Doc. 95 at p. 68, ¶ 105.  Cortech's opposition brief does not distinguish the two counterclaims, Doc. 101 at 3-11, which is not surprising given the Seventh Circuit's recognition that the UDTPA is "generally … indistinguishable from the Lanham Act except of course in its geographical scope."  *Neuros*, 698 F.3d at 523.  Accordingly, Cortech's UDTPA counterclaim is dismissed as well.  *See Havoco of*

*Am., Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983) ("Under Illinois law, the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process."); *Shuffle Tech Int'l*, 2015 WL 5934834, at *16 (holding that inequitable conduct during a patent prosecution is not actionable under the UDTPA); *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 710 (N.D. Ill. 2006) (dismissing a UDTPA claim, reasoning that the defendant's letters "involve only a general statement that [the plaintiff] does not have a license or authorization to use the patented system" and "do not make disparaging statements regarding the quality of [the plaintiff's] business").

## II.     Motion to Strike

Rule 12(f) states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) motions are generally "disfavored," but may "serve to expedite" a case if they "remove unnecessary clutter." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Rule 12(f) grants a district court "considerable discretion." *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

### A.     Prosecution History Estoppel Affirmative Defense

Cortech's prosecution history estoppel affirmative defense alleges that Norix made or attempted to make changes, corrections, and amendments to both patents-in-suit during the application process to overcome prior art and/or indefiniteness rejections, and seeks to prohibit Norix from making arguments in support of its infringement claims that are inconsistent with those changes, corrections, and amendments. Doc. 95 at pp. 48-49, ¶¶ 127-133. Prosecution history estoppel is a viable affirmative defense to a patent infringement claim. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002) (holding that when a

"patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent"). Norix argues that Cortech's defense should be stricken because it does not say which of Norix's positions during the patent application process are inconsistent with how it is litigating its infringement claims. Doc. 99 at 12; Doc. 102 at 6-7.

"Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure," *Heller*, 883 F.2d at 1294, including the requirement under Rule 8(b)(1)(A) that a defendant "state in short and plain terms its defenses," Fed. R. Civ. P. 8(b)(1)(A). Nevertheless, a motion to strike generally should be denied "unless the challenged allegations … may cause some form of significant prejudice to one or more of the parties." *FDIC v. Giannoulias*, 918 F. Supp. 2d 768, 771 (N.D. Ill. 2013) (quoting 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (3d ed. 2004)).

The possible prejudice to Norix here is that it must guess at the factual basis for Cortech's prosecution history estoppel affirmative defense. Accordingly, rather than strike the defense, the court cures any prejudice by granting Norix one additional interrogatory to ask Cortech for the basis of its defense. *See* Fed. R. Civ. P. 33(a)(1) ("Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)."). That additional interrogatory is proportional to the needs of this case, and the benefit to Norix of clarifying the defense far outweighs any burden on Cortech. *See* Fed. R. Civ. P. 26(b)(1).

  **B.**  **Paragraphs 7-47 and 64 of the Counterclaims**

Finally, Norix moves to strike Paragraphs 7-47 and 64 of Cortech's counterclaims, arguing that they "are not relevant to any valid counterclaim and unduly prejudice Norix by

7

injecting needless complexity for no legitimate purpose." Doc. 99 at 13. Cortech responds that Paragraphs 7-47 and 64 are relevant to its "defenses in this case." Doc. 101 at 13. In its reply, Norix fails to address Cortech's argument that Paragraphs 7-47 and 64 are relevant to Cortech's affirmative defenses, and simply reiterates that they are irrelevant to the counterclaims. Doc. 102 at 7. Norix has thereby forfeited any argument that the Paragraphs are irrelevant to the affirmative defenses or that a defendant cannot support its defenses with allegations set forth in its counterclaims. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted). Norix's motion to strike Paragraphs 7-47 and 64 as irrelevant is therefore denied.

## Conclusion

Norix's motion to dismiss Cortech's Lanham Act and UDTPA counterclaims is granted. The dismissal of those counterclaims is without prejudice, and Cortech has until November 15, 2021, to file amended counterclaims. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("[A] plaintiff whose original complaint has been dismissed … should be given at least one opportunity to try to amend … ."). If Cortech does not replead its counterclaims, the dismissal will convert automatically to a with-prejudice dismissal. Norix's motion to strike Cortech's prosecution history estoppel affirmative defense is denied, though Norix is given one additional interrogatory to seek the factual basis of that defense. Norix's motion to strike Paragraphs 7-47 and 64 of the counterclaims is denied.

November 1, 2021

_____
United States District Judge

8